

ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERICSSON RADIO, et al. | § | CIVIL ACTION NO. |
| | § | 3-93CV-01809-M |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERDIGITAL COMMUNICATIONS | § | |
| CORP., et al. | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| NOKIA CORPORATION | § | |
| | § | |
| Intervenor | § | |



FILED

DEC 2 9 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

## MEMORANDUM IN SUPPORT OF
## MOTION TO REINSTATE VACATED DECISIONS

DAVID W. ELROD
ELROD, PLLC
500 North Akard, Suite 3000
Dallas, Texas 75201
Phone: (214) 953-0182
Facsimile: (214) 953-0185

PETER KONTIO
Georgia Bar No. 428050
PATRICK J. FLINN
Georgia Bar No. 264540
KEITH E. BROYLES
Georgia Bar No. 090152
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Phone: 404 881 7000
Facsimile: 404 881 7777

Attorneys for
NOKIA CORPORATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT .......................................................................................................................4

    I.    THE COURT IMPROPERLY VACATED ITS PREVIOUS ORDERS AND
        RULINGS .................................................................................................................4

        A.  Relevant Precedent Requires "Exceptional Circumstances" Before a
            Court Can Vacate Previous Rulings After Parties Settle .................................5

            1.  The *Bancorp* decision .......................................................................6

            2.  Courts deciding whether to vacate patent related rulings have required
               "exceptional circumstances" before vacating *Markman* rulings or
               summary judgment orders.............................................................................7

        B.  There Are No Exceptional Circumstances Justifying Vacatur. .........................8

            1.  Vacatur of this Court's rulings does not favor settlement nor was it
               critical to the InterDigital/Ericsson settlement ...............................................9

            2.  This litigation did involve novel and controversial issues...........................10

            3.  This litigation affects non-parties ................................................................11

            4.  Decisions interpreting the scope of patent monopolies should not be
               vacated because of a compelling public interest in defining publicly
               granted monopolies......................................................................................12

    II.    THE COURT SHOULD REINSTATE THE VACATED RULINGS
        PURSUANT TO RULE 60(B) ...............................................................................13

        A.  The Court Retains the Power to Reinstate Its Previous Rulings.....................13

        B.  The Court Should Exercise Its Discretion and Grant Rule 60(b) Relief..........16

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Allen-Bradley Co., LLC v. Kollmorgen Corp.*,
    199 F.R.D. 316 (E.D. Wis. 2001) ..................................................... 7, 8, 9, 10, 11, 14

*Aqua Marine Supply v. Aim Machining, Inc.*,
    247 F.3d 1216 (Fed. Cir. 2001) .............................................................. 7, 8, 9, 12, 15

*Bros Inc. v. W.E. Grace Mfg. Co.*,
    320 F.2d 594, 609-610 (5th Cir. 1963) [hereinafter "*Bros I*"] ................................... 12

*Bros Inc., v. W.E. Grace Mfg. Co.*,
    351 F.2d 208, 211 (5th Cir. 1965) [hereinafter "*Bros II*"] .................................. 14, 15

*Edward H. Bohlin Co., v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993) ...................... 15, 16

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*,
    510 U.S. 27, 40 (1993) (Stevens, J., dissenting) ......................................................... 6

*Nilssen v. Motorola, Inc.*, Nos. 93 C 6333, 96 C 5571,
    2002 WL 31369410 (N.D. Ill. Oct. 21, 2002) ............................ 7, 8, 9, 10, 11, 12, 14

*Persistence Software, Inc. v. Object People, Inc.*,
    200 F.R.D. 626 (N.D. Cal. 2001) .............................................................................. 8

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 n.3 (5th Cir. Unit A 1981) .......... 14, 15, 16

*TNB Fin., Inc. v. James F. Parker Interest (In re Grimland, Inc.)*,
    243 F.3d 228, 233 (5th Cir. 2001) ......................................................................... 14

*Tommy Hilfiger Licensing, Inc. v. Costco Cos.*, No. 99 Civ. 3894,
    2002 U.S. Dist. LEXIS 22696, at *7 (S.D.N.Y. Nov. 25, 2002) .............................. 12

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994) ............................................................. 5, 6, 7, 8, 9, 11, 14, 15, 17

## STATUTES

35 U.S.C. § 271(c) ......................................................................................................... 11

**OTHER AUTHORITIES**

Joint Motion to Seal and Vacate ....................................................... 4, 8, 9, 10, 11, 12, 14, 15

Transcript of Hearing, p. 66, lines 18-20,
     *Ericsson v. InterDigital*, No. 3:93-CV-01809-M (N.D. Tex. Nov. 25, 2003) ...... 5, 10

**RULES**

Fed. R. Civ. P. 60(b) .......................................................................... 13, 14, 15, 16

## INTRODUCTION

Nokia Corporation ("Nokia") seeks to reinstate the orders this Court previously vacated with its March 18, 2003 Order. The motion is necessary because, contrary to the representations made to the Court by InterDigital Communications Corp. ("InterDigital") and Ericsson, Inc. ("Ericsson"), this case did not involve the "exceptional circumstances" necessary to justify vacating orders and rulings that have a direct and substantial impact on non-parties such as Nokia.

In agreeing to conclusively and irrevocably settle this litigation, InterDigital made a gamble. It agreed to attempt to void the precedential value of this Court's rulings, through a non-adversarial Joint Motion to Seal and Vacate ("Motion to Vacate"), so it could use its settlement agreement with Ericsson against non-parties in the wireless communications industry such as Nokia, Samsung and others. In the motion, however, InterDigital and Ericsson failed to explain to the Court the high standard that must be met under Supreme Court precedent to vacate rulings, or the necessary "exceptional circumstances" to justify such vacatur. Indeed, although InterDigital suggested to this Court that this case involved exceptional circumstances because the settlement between InterDigital and Ericsson was conditioned upon vacatur, the settlement agreement was in fact executed in advance of the filing of the Motion to Vacate and by its terms only required that the Motion to Vacate be filed, not granted. InterDigital and Ericsson further told the Court that vacating the rulings was justified because the vacatur would not impact third parties.

Only days after representing that the orders in this case should be vacated because they were of interest only to the parties, InterDigital issued a press release making the public believe that it had broad, valid patent rights by asserting that its settlement with Ericsson would impose a liability of hundreds of millions of dollars on both Nokia and

Samsung, by virtue of pre-existing agreements. This Court's vacated orders and rulings bear directly on the issues InterDigital has raised with Nokia and likely clearly define and possibly reflect weaknesses in, or constitute repudiations of, InterDigital's claimed patent rights.

Based on InterDigital and Ericsson's one-sided motion, its lack of adversarial legal analysis, and factual inaccuracies, the Court vacated its presumptively correct rulings that narrowly defined the scope of InterDigital's patents. When the circumstances of the InterDigital and Ericsson litigation are examined closely, however, it becomes clear there were no "exceptional circumstances" present that justify vacatur of this Court's prior rulings.

## STATEMENT OF FACTS

In September of 1993, Ericsson filed this suit seeking, *inter alia*, a declaratory judgment that Ericsson did not infringe the InterDigital patents and that the patents were invalid and unenforceable. InterDigital counterclaimed, alleging patent infringement by Ericsson. Much of what happened in this litigation between InterDigital and Ericsson is not known because most of the record after November 1, 2001 was filed under seal, which is the subject of a separate motion filed by Nokia.

It is clear, however, that the litigation between Ericsson and InterDigital spanned nearly ten years and generated numerous factual findings and orders including a two hundred page special master's report, orders construing InterDigital's patents, and, apparently, a summary judgment order holding that some or all of InterDigital's patents were not infringed. The potential impact of this Court's *Markman* and summary judgment orders on InterDigital's patents and existing license agreements with other parties seemed to have prompted InterDigital to settle the case.

InterDigital and Ericsson fully, completely, and irrevocably settled the case on or about March 10, 2003. That settlement agreement required both parties to execute various releases and included an unusual requirement that the parties jointly ask this Court to vacate the *Markman* and summary judgment rulings that evidently were adverse to InterDigital. The settlement agreement merely provided for filing the Motion to Vacate; it was not conditioned on the success of that motion, however. Indeed, the terms of (or impact on third parties of) the settlement were apparently attractive enough to both parties without such a condition, and the case completely settled a fully week before the parties filed their Motion to Vacate.

In the Motion to Vacate, InterDigital and Ericsson sought to vacate the following Court orders and rulings:

| DATE FILED | DOCKET #[1] | DOCUMENT |
|---|---|---|
| 07/14/00 | 472 | Special Master's Draft Report and Recommendation on Claim Construction |
| 09/08/000 | 487 | Special Master's Final Report and Recommendation on Claim Construction |
| 05/21/01 | 543—545 | Findings, Conclusions, and Recommendation on Claim Construction |
| 07/16/01 | 569—572 | Order [on Claim Construction] |
| 07/24/01 | 575 | Agreed Order [on Claim Construction] |
| 05/21/02 | 666 | Memorandum Opinion and Order Granting Ericsson's Motion for Summary Judgment of Non-Infringement Based on the Single Base Station Limitation |
| 01/09/03 | 717 | Order Dismissing Declaratory Judgment Action Regarding Non-Infringed Claims |

---

[1] Where the specific docket number could not be identified, the range of docket numbers in which the document may be found is provided.

The parties filed the Motion to Vacate on or about March 17, 2003, a week after they had settled the case on March 10, 2003. Apparently, the Court granted that motion the next day, March 18, 2003, and formally dismissed the case on March 19, 2003.

Though vacatur of this Court's rulings was not a condition of the settlement, InterDigital carefully parsed the language in the Motion to Vacate to suggest that vacatur was a condition of settlement (Motion to Vacate, p. 5). InterDigital also told the Court that it should vacate its rulings because "no novel or controversial legal issues were decided in this Court's summary judgment orders" and because the dispute was entirely private between Ericsson and InterDigital (Id.). Indeed, InterDigital told the Court:

> . . . *no non-parties to this litigation would be affected by vacatur of the Markman rulings and summary judgment orders* because there is no other litigation currently pending in any other court regarding the patents and issues involved in this litigation.

(Id. (emphasis added)).

The Court's vacated rulings in fact bear squarely on the veracity of InterDigital's general accusation that Nokia, Samsung and others are practicing inventions claimed by the InterDigital Patents. Evidently the Court's rulings show that some or all of InterDigital's assertions about its patent rights are false. For Nokia, these prior rulings may have likely resolved some, if not all, of InterDigital's accusations against it but for InterDigital's suspicious scheme to vacate this Court's rulings and then request that the Court permanently seal the record in this case.

## ARGUMENT

## I.     THE COURT IMPROPERLY VACATED ITS PREVIOUS ORDERS AND RULINGS

After nearly ten years of litigation, InterDigital and Ericsson filed a Motion to Vacate this Court's *Markman* rulings and summary judgment orders. Bereft of any

adversarial analysis,[2] the Court granted that motion despite authority from the U.S. Supreme Court, the Court of Appeals for the Federal Circuit, and other district courts addressing this issue, that presumptively correct judicial rulings, especially rulings concerning the scope, infringement, and validity of patents, should not be vacated merely because two parties have settled and ask for vacatur. These cases all hold that claim construction rulings and summary judgment orders should not be vacated absent "exceptional circumstances."

In the Motion to Vacate, InterDigital and Ericsson failed to fully explain to the Court the high standard that must be met to justify vacating rulings nor did they make clear that their settlement was not conditioned on the Court vacating its prior rulings. When the circumstances of this case are analyzed in light of this strict standard, it becomes clear that the "extraordinary circumstances" required to vacate this Court's prior rulings simply do not exist.

**A.      Relevant Precedent Requires "Exceptional Circumstances" Before a Court Can Vacate Previous Rulings After Parties Settle**

Prior to 1994, some courts maintained a regular practice of vacating previous decisions once parties reached settlement. Those practices stopped when the U.S. Supreme Court addressed one aspect of that practice – whether appellate courts should vacate the decisions of lower courts when the parties settle while an appeal is pending. *See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18 (1994). While the Supreme Court's *Bancorp* decision did not address the specific issue presented to this Court –

---

[2] Nokia's instant motion is pursuant to the Court's ruling granting Nokia permissive intervention. While Nokia understands that the scope of its intervention is broad enough for the instant motion, Nokia has also concurrently moved the Court for such additional intervention as may be necessary. *See* Transcript of Hearing, p. 66, lines 18-20, *Ericsson v. InterDigital,* No. 3:93-CV-01809-M (N.D. Tex. Nov. 25, 2003) (stating, "if there is a motion to vacate my earlier vacating of orders, I will hear from you on that later").

whether it is proper for a Court to vacate its own decisions merely because the parties have settled – the analysis and policies articulated in *Bancorp* are central to the issue before the Court.

### 1. The *Bancorp* decision

In *Bancorp*, the Supreme Court addressed a federal appellate court's authority to vacate its own or a district court's judgment when a judgment becomes moot as a result of a settlement. The Supreme Court held that the decision to vacate a judgment is an equitable one and that a judgment may be vacated when "exceptional circumstances" exist. *Id.* at 29. In its analysis, the *Bancorp* Court identified the public policy and equitable considerations that preclude vacating court decisions.

First, the Court held that a party seeking vacatur must carry the burden of proving that it is "equitabl[y] entitle[d] to the extraordinary remedy of vacatur." *Id.* at 26. In describing this burden, the Court reasoned that a party's deliberate decision to settle litigation and forgo further proceedings "constitutes a failure of equity that makes the burden decisive," *i.e.*, precludes a party from seeking vacatur in the normal case. *Id.* Additionally, the Supreme Court noted the strong public interest in judicial precedents. These "'[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur.'" *Id.* (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

While *Bancorp* does not explain what "exceptional circumstances" justify vacatur, it specifically identifies one circumstance that does not justify vacatur —"the mere fact that the settlement agreement provides for vacatur." *Id.* at 29. Settlement agreements that

merely provide for vacatur "neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations" identified in *Bancorp*. *Id.*

> 2.   **Courts deciding whether to vacate patent related rulings have required "exceptional circumstances" before vacating *Markman* rulings or summary judgment orders**

Federal appellate and district courts have universally applied the standards articulated in *Bancorp* when addressing requests to vacate *Markman* rulings and their related summary judgment orders.  The courts that have required a showing of "exceptional circumstances" before vacating such rulings and orders include:

- *Aqua Marine Supply v. Aim Machining, Inc.*, 247 F.3d 1216 (Fed. Cir. 2001) (affirming district court's use of the *Bancorp* standard to deny a motion to vacate a summary judgment ruling of invalidity and denying a similar motion at the circuit level because there were no "exceptional circumstances" despite the patentee's concerns about potential collateral estoppel effects);

- *Nilssen v. Motorola, Inc.*, Nos. 93 C 6333, 96 C 5571, 2002 WL 31369410 (N.D. Ill. Oct. 21, 2002) (applying the *Bancorp* standard and denying motion to vacate all of the court's prior rulings, including claim construction and summary judgment rulings, because there were no "exceptional circumstances" even though the patentee was then engaged in litigation over the same patents with other parties);

- *Allen-Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316 (E.D. Wis. 2001) (applying the *Bancorp* standard and denying motion to vacate patent claim construction ruling because there were no "exceptional circumstances" even though settlement was conditioned on vacatur and patentee was then engaged in litigation over the same patent with another party).

Indeed, the only post-*Bancorp* patent case that allowed vacatur after settlement is easily distinguishable from the facts of this case and *Aqua Marine, Nilssen*, and *Allen-Bradley*.

In particular, in *Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626 (N.D. Cal. 2001), a district court vacated a summary judgment that was based on the patentee's failure to produce "*any admissible evidence*" establishing a date of invention within a specific timeframe. *Id.* at 627. The court reasoned that vacatur was proper because the patentee might be able to produce such evidence in subsequent litigation. This language and reasoning implies that the patentee provided some evidence, albeit inadmissible, of the necessary date. Surprisingly, the *Persistence* court did not even address whether it should apply the *Bancorp* standard and only made a passing reference to *Bancorp*. In that reference, the court reasoned that because the case was decided on such narrow factual grounds, one of the principles of *Bancorp*, that "judicial precedents are presumptively correct and valuable to the legal community as a whole," was inapplicable. *Bancorp*, 513 U.S. at 26. The court's failure to consider the *Bancorp* standard in *Persistence* makes that decision of little persuasive value.

**B.      There Are No Exceptional Circumstances Justifying Vacatur.**

Here, if the Court had been properly apprised of the strict *Bancorp* standard, it is unlikely the Court would have vacated its previous rulings. In the Motion to Vacate, InterDigital cited four primary reasons that this Court should vacate its prior orders: (1) vacatur would promote settlement; (2) no novel or controversial legal issues were decided in this Court's orders; (3) no non-parties would be affected by vacatur; and (4) the public interest was weak, and allowing the rulings to stand would not serve (and may negatively impact) the public interest (Motion to Vacate, pp. 4-5). Each of InterDigital's arguments

was considered and squarely rejected as an "exceptional circumstance" justifying vacatur in *Aqua Marine, Nilssen,* and *Allen-Bradley*.

> 1. **Vacatur of this Court's rulings does not favor settlement nor was it critical to the InterDigital/Ericsson settlement**

*Bancorp*, *Nilssen*, and *Allen-Bradley* all reject arguments that vacating decisions will favor settlement generally. *Bancorp* itself held that it was impossible to conclude, as InterDigital and Ericsson assert, that vacating decisions will favor settlement. *Bancorp*, 513 U.S. at 28 (stating, "[w]e find it quite impossible to assess the effect of our holding, either way, upon the frequency or systemic value of settlement"). In fact, both *Nilssen* and *Allen-Bradley* conclude that vacating claim construction rulings may actually hinder settlement. *Nilssen*, 2002 WL 31369410, at *3 (stating that denying vacatur "may actually enhance the chance of settlement"); *Allen-Bradley*, 199 F.R.D. at 318, 320 (stating, "the availability of post-*Markman* hearing vacatur [may] encourage the gambler within some litigations. They may well decide to litigate the construction of the claims").

Regardless of whether vacating previous decisions encourages settlement generally, InterDigital's assertion that vacatur of this Court's rulings would have somehow impacted its settlement with Ericsson is disingenuous. While InterDigital parsed its language to imply that the settlement with Ericsson was somehow dependent on the Motion to Vacate, any such implication is false. InterDigital and Ericsson did not condition their settlement on the Court granting the Motion to Vacate. By the time InterDigital and Ericsson moved to vacate the Court's rulings, they had already agreed in their settlement agreement to "irrevocably" settle the entirety of the litigation. Consequently, reinstating the vacated rulings will do nothing to harm InterDigital and Ericsson's specific interests in settlement and will not revive the litigation between them. *Compare* Motion to Vacate, p. 5 *with*

*Allen-Bradley*, 199 F.R.D. at 320 (denying motion to vacate even though settlement was conditioned on vacatur).

### 2. This litigation did involve novel and controversial issues

Despite InterDigital's argument that this litigation involved no novel or controversial legal issues, the time and effort spent litigating contentious patent cases like this one alone demonstrates that novel and controversial issues are decided. As explained in *Nilssen*:

> [t]hese include rulings by three different judges spanning over nine years of litigation. Several include claim construction of patents. Furthermore, the patents at issue are complex, and a special master was required due to the degree of technical complexity. Vacating all the previous rulings in these matters would likely require many of these already decided issues to be reexamined. . . . [T]he Court would be required to assess each argument anew and rule again on possibly the same previously argued issues.

*Nilssen*, 2002 WL 31369410, at *3.

When this Court vacated its previous rulings and orders, the *Ericsson v. InterDigital* litigation had been pending for nearly ten years, involved almost 750 docket entries, involved a 200 page special masters report, a significant and substantial claim construction opinion construing multiple patents for the first time, and a summary judgment ruling disposing of some or all of InterDigital's claims of infringement. To state that no "novel or controversial legal issues were decided in this Court's summary judgment orders" is simply not true. (Motion to Vacate, p. 5). Indeed, the Motion to Vacate acknowledges that the construction of the patents-in-suit is controversial and that "the parties respectfully disagree with various aspects of the *Markman* rulings" (Motion to Vacate, p. 5)

Additionally, whether the vacated rulings decided any novel or controversial issues is only relevant to preclude vacatur, not justify it. A large fraction, if not the majority, of judicial decisions do not address novel or controversial issues as InterDigital uses those

terms. Thus, the lack of such issues is not an "exceptional circumstances" as *Bancorp* requires. Rather, the presence of novel or controversial issues can be sufficient grounds to preclude vacatur even if there were exceptional circumstances. The precedent and judicial resolution of such issues has an importance to others separate and distinct from that of the private litigants. Indeed, as explained by *Nilssen,* reasoning such as InterDigital's "downplays the importance of this and the previous . . . rulings and the interest the public has in such rulings . . . ." *Nilssen*, 2002 WL 31369410, at *3.

**3.    This litigation affects non-parties**

InterDigital and Ericsson concede that this litigation has the potential to affect non-parties. They explained to the Court when filing their motion that their efforts in sealing and vacating the Court's rulings were designed to "prevent these interlocutory rulings from having future precedential effect" (Motion to Vacate, at p.5). Such a precedential effect would accrue to the benefit of non-parties such as Nokia, Samsung and others regardless of whether other litigation was pending at the time of settlement. Additionally, these vacated rulings affect non-parties because, as *Allen-Bradley* explains, "claim construction order[s], like nearly all court decisions and orders, affects interests beyond hose of the parties in the present action." *Allen-Bradley*, 199 F.R.D. at 320.

Even InterDigital's contention that "non-infringement determinations are necessarily product specific, and non-parties that manufacture their own respective, different products are not impacted by the summary judgment orders," is incorrect (Motion to Vacate, p.5). Such noninfringement judgments establish, *inter alia*, non-infringing uses and designs of products. These non-infringing uses and designs allow parties such as Nokia and Samsung to design around patents and may also defeat a claim of contributory patent infringement. *See* 35 U.S.C. § 271(c).

Even assuming, *arguendo*, that no non-parties were directly affected by the Court's vacated rulings, that factor does not establish "exceptional circumstances;" it merely indicates there is no prejudice to specifically identified parties. *See, e.g., Aqua Marine*, 247 F.3d at 1221 (denying motion to vacate regardless of whether the decision has collateral estoppel effects); *Nilssen*, 2002 WL 31369410, at *3 (stating, "Nilssen fails to demonstrate why avoiding issue preclusion constitutes an exceptional, or even significant, circumstance"). In fact, "vacatur should be denied if the decision might allow for issue preclusion in favor of nonparties." *Tommy Hilfiger Licensing, Inc. v. Costco Cos.*, No. 99 Civ. 3894, 2002 U.S. Dist. LEXIS 22696, at *7 (S.D.N.Y. Nov. 25, 2002) (cited in Motion to Vacate, p. 4). Accordingly, the Court should reinstate the vacated rulings if for *no* other reason then because they "might allow for issue preclusion in favor of [Nokia, Samsung and others]." *Id.*

### 4. Decisions interpreting the scope of patent monopolies should not be vacated because of a compelling public interest in defining publicly granted monopolies

Lastly, and perhaps most importantly, there is a compelling public interest in decisions interpreting the scope and validity of patents. *See Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 609-610 (5th Cir. 1963) (affirming grant of Rule 60(b) relief and stating, "[t]he public interest in a governmentally bestowed [patent] monopoly is of transcendent importance.") [hereinafter "*Bros I*"]. As Nokia has previously explained, courts, including the Supreme Court, have repeatedly emphasized the important public policies favoring judicial construction of patents (Nokia's Memorandum In Support of Motion to Intervene and for Access to Sealed Record, Section II.C).

InterDigital's dispute with Nokia, as well as with nearly every other participant in the wireless telephone industry, demonstrates this compelling public interest. Nokia is one of the largest manufacturers of wireless telephones and network equipment in the world. Tens of thousands of U.S. consumers buy Nokia phone products. At the same time that InterDigital is claiming that Nokia owes it hundreds of millions of dollars, InterDigital has done everything within its power to impair Nokia's ability to obtain and use presumptively correct Court records that bear on the scope and validity of the InterDigital patents. This interest, however, is not limited to Nokia. It extends to every other cell-phone manufacturer and, indirectly, to every cell-phone user who may have to pay increased prices on phones and service because of InterDigital's asserted patents.

## II.  THE COURT SHOULD REINSTATE THE VACATED RULINGS PURSUANT TO RULE 60(B)

This Court has the power to reinstate its vacated rulings and orders pursuant to Federal Rule of Civil Procedure 60(b). The strong private interest that Nokia, Samsung, the wireless communications industry, and the public interest that others have in judicial construction of patents, combined with the failure to meet the standard articulated in *Bancorp,* demands that this Court reinstate its previously vacated orders. There is no prejudice to either Ericsson or InterDigital, beyond the holdings in the orders themselves, because they had fully settled the case before filing the Motion to Vacate and because their settlement was in no way conditioned on the Court granting their motion.

### A.  The Court Retains the Power to Reinstate Its Previous Rulings.

Rule 60(b) establishes broad grounds for challenging a final judgment. These grounds include mistakes of law or fact, unintentional misrepresentations, and "any other reason justifying relief . . . ." Fed. R. Civ. P. 60(b) (1), (3), (6); *see also TNB Fin., Inc. v.*

*James F. Parker Interest (In re Grimland, Inc.*), 243 F.3d 228, 233 (5th Cir. 2001) (reversing district court's grant of an unopposed motion and stating that, "[c]ircuit precedent does allow the use of Rule 60(b) . . . to correct judicial error," including mistakes of law); *Bros Inc., v. W.E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965) (affirming grant of Rule 60(b) relief in a patent case because of mistaken facts in an affidavit) [hereinafter "*Bros II*"]; *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 n.3 (5th Cir. Unit A 1981) (granting Rule 60(b) relief and holding that Rule 60(b)(6) is an extension of the grounds listed in Rule 60(b)(1)-(5) if the motion is filed within a year).

While Nokia does not know the reasons why the Court granted the motion to vacate,[3] that decision presumably was based on a number of incorrect conclusions and/or misrepresentations. These incorrect conclusions or representations possibly include:

- A conclusion that the Court did not need to find exceptional circumstances;[4]
- A conclusion that settlement by itself constitutes exceptional circumstances;[5]
- A misstatement that "[n]o novel or controversial legal issues were decided in this Court's summary judgment orders" (Motion to Vacate, at p. 5);[6]
- A misstatement that "non-parties that manufacture their own respective, different products are not impacted by the summary judgment orders" (*Id.*);[7]
- A misstatement that "[n]o non-parties to this litigation would be affected by vacatur of the *Markman* rulings and summary judgment orders" (*Id.*);[8]
- An implied but wrong assumption that the case would not settle unless the previous rulings were vacated (Motion to Vacate, p. 4);[9]

---

[3] Unlike the Court's order sealing the record, the Court's order made no express factual findings regarding its decision to vacate its previous orders and did not decide whether there were "exceptional circumstances."

[4] *See Nilssen*, 2002 WL 31369410, at *2; *Allen-Bradley*, 199 F.R.D. at 318.

[5] *See Bancorp*, 513 U.S. at 29 (stating, "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur").

[6] *See* Section I.B.2, *supra*, p. 10.

[7] *See* text, *supra*, p. 11.

[8] *See* Section I.B.3, *supra*, p. 11.

- A conclusion that vacatur would promote settlement;[10]
- A conclusion that there was only a minor public interest in the previous rulings;[11]

If the Court granted the Motion to Vacate for any of these reasons, Rule 60(b) authorizes relief regardless of whether incorrect conclusions were legal or factual, or whether the misstatements were fraudulent, intentional, or unintentional. *See Bros II*, at 211.

Even if there were no legal or factual mistakes or misrepresentations made in vacating this Court's prior rulings, the residual clause, Rule 60(b)(6), authorizes relief for "any other reason justifying relief." Fed. R. Civ. P. Rule 60(b)(6). This clause is intended to cover unforeseen contingencies and requires "exceptional circumstances," not otherwise covered under subsections 1-5 before it can be used to alter judgments. *Edward H. Bohlin Co., v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993); *Seven Elves*, 635 F.2d at 402 n.3 (granting Rule 60(b) relief and holding that Rule 60(b)(6) is an extension of the grounds listed in Rule 60(b)(1)-(5) if the motion is filed within a year).

This case clearly meets this standard. InterDigital and Ericsson settled the litigation between them without including a condition relating to vacatur. Then, InterDigital and Ericsson secretly filed a joint, non-adversarial Motion to Vacate rulings that defined the scope of a publicly granted patent monopoly. A sealed order granted that motion the next day, in contravention of the principles and policies articulated in *Bancorp* and *Aqua Marine*. The following day, the case was dismissed. Absent Rule 60(b), it would be

---

[9] While InterDigital parsed its language to as to not explicitly state this, that well-parsed language falsely implies that the parties' settlement was conditioned on the Court granting the Motion to Vacate. *See* text, *supra*, p. 9.

[10] *See* Section I.B.1, *supra*, p. 9.

[11] *See* Section I.B.4, *supra*, p. 12.

impossible to fully and properly address the merits of vacating such presumptively correct judicial rulings defining the scope of a publicly granted patent monopoly.

### B. The Court Should Exercise Its Discretion and Grant Rule 60(b) Relief.

The Fifth Circuit has identified at least seven factors that courts should apply when addressing Rule 60(b) motions:

> (i) [t]hat final judgments should not lightly be disturbed; (ii) that the Rule 60(b) motion is not to be used as a substitute for appeal; (iii) that the rule should be liberally construed in order to do substantial justice; (iv) whether the motion was made within a reasonable time; (v) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (vi) whether there are any intervening equities that would make it inequitable to grant relief; and (vii) any other factors relevant to the justice of the judgment under attack.

*Bohlin*, 6 F.3d at 356 (roman numerals added) (citing *Seven Elves*, 635 F.2d at 402). Broadly speaking, these seven factors try to balance the interest in finality of judgments with the strong premium placed on just results.[12] In this case, the interest in a final judgment is particularly weak. Reinstating the Court's *Markman* rulings and summary judgment motions does nothing to disturb InterDigital's and Ericsson's March 10, 2003 settlement agreement or the Court's dismissal of the suit with prejudice based on that agreement. Accordingly, none of InterDigital and Ericsson's legitimate settlement expectations are disturbed.

On the other hand, the interest of justice and the public interest in knowing the scope of patent monopolies argues strongly in favor of reinstating the Court's vacated rulings. InterDigital and Ericsson's one-sided, non-adversarial motion presented a distorted

---

[12] Several factors, such as (ii), (iv), and (v), address important procedural or structural interests. These factors are of little importance because of Nokia was unable to comply with these requirements due to InterDitigal's and Ericsson's efforts to seal the record.

picture of the relevant law and facts.  Without the benefit of "the light shed by adversary presentation," the Court failed to apply properly the standards and policies articulated in *Bancorp* and its progeny, especially as those standards relate to claim construction rulings. *Bancorp*, 513 U.S. at 24.  Now, with adversary presentation, this Court can apply the *Bancorp* standards and reinstate its previous rulings.

As explained above, there are no extraordinary circumstances that justify vacatur. Additionally, the strong public interest in defining the scope of patent monopolies and Nokia's particularized interest in those rulings strongly favor reinstating those verdicts.

## CONCLUSION

In their Motion to Vacate, InterDigital and Ericsson failed to explain to the Court the high standard required to vacate rulings, or the necessary "exceptional circumstances" to justify such vacatur.  Although InterDigital and Ericsson cited in their non-adversarial motion several reasons that the Court should vacate its rulings, each of the reasons relied upon by InterDigital and Ericsson have been soundly rejected by other courts for failing to meet the exceptional circumstances standard.  For the foregoing reasons, therefore, Nokia respectfully requests that the Court grant its Motion to Reinstate Vacated Decisions.

Respectfully submitted this $\mathcal{29}$ day of December, 2003.

By: _____

DAVID W. ELROD
ELROD, PLLC
500 North Akard
Suite 3000
Dallas, Texas 75201

PETER KONTIO
Georgia Bar No. 428050
PATRICK J. FLINN
Georgia Bar No. 264540
KEITH E. BROYLES
Georgia Bar No. 090152
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Phone: 404 881 7000
Facsimile: 404 881 7777

Attorneys for
NOKIA CORPORATION

## CERTIFICATE OF SERVICE

I certify that the foregoing Memorandum In Support Of Motion To Reinstate Vacated Decisions was served, on this _27_ day of December, 2003, by First Class Mail to the following:

D. Dudley Oldham
Robert S. Harrell
Linda Addison
FULBRIGHT & JAWORSKI LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Dan D. Davison
FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue, Suite 75201
Dallas, Texas 75201

*Attorneys for InterDigital Communications
Corporation and InterDigital Technology
Corporation*

Mike McKool, Jr.
Douglas Cawley
T. Gordon White
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

*Attorneys for Ericsson, Inc.*

David W. Elrod