ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN - 3 2004

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS

| | | |
|---|---|---|
| ERICSSON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:93-CV-1809-M |
| | § | |
| INTERDIGITAL COMMUNICATIONS | § | |
| CORPORATION and INTERDIGITAL | § | |
| TECHNOLOGY CORPORATION, | § | |
| | § | |
| Defendants, | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Nokia Corporation's Motion to Reinstate Vacated Decisions, filed on

December 29, 2003. For the reasons stated below, the Court grants Nokia Corporation's Motion

to Reinstate Vacated Decisions.

## I. BACKGROUND

In September 1993, Ericsson, Inc. ("Ericsson") filed this suit seeking a declaratory

judgment that Ericsson was not infringing the patents of InterDigital Communications

Corporation and InterDigital Technology Corporation (collectively "InterDigital") and that

InterDigital's patents were invalid and unenforceable. InterDigital counterclaimed, alleging

patent infringement by Ericsson. On March 17, 2003, prior to a final judgment, Ericsson and

InterDigital filed a joint motion notifying the Court that the parties had settled all outstanding

disputes between the parties, requesting the vacatur of the *Markman* rulings and summary

judgment orders previously entered in the case, and asking that all documents under seal at that

time remain permanently under seal. On March 18, 2003, the Court granted the parties' joint

1

motion.  The Court vacated the following orders and rulings:

- Special Master's Draft Report and Recommendation on Claim Construction, entered on July 14, 2000

- Special Master's Final Report and Recommendation on Claim Construction, entered on September 8, 2000

- Findings, Conclusions, and Recommendations of the United States Magistrate Judge, entered on May 21, 2001

- Order [on Claim Construction], entered on July 16, 2001

- Agreed Order [on Claim Construction], entered on July 24, 2001

- Memorandum Opinion and Order Granting Ericsson's Motion for Summary Judgment of Non-Infringement Based on the Single Base Station Limitation, entered on May 21, 2002

- Order Dismissing Declaratory Judgment Action Regarding Non-Infringed Claims, entered on January 9, 2003

Additionally, the Court ordered: "[A]ll documents under seal in this case shall remain permanently under seal and shall continue to be governed by the protective order signed by this Court on December 18, 1993 and as subsequently amended by this Court."  On March 19, 2003, the Court entered a "Stipulation and Order of Dismissal," dismissing the action with prejudice.  Concurrent with the settlement and dismissal of this action, InterDigital and Ericsson entered into patent licensing agreements.

On July 22, 2003, Nokia Corporation ("Nokia") filed a motion to intervene in this action, for the limited purpose of seeking access to the sealed filings.  Nokia and InterDigital are involved in a dispute over the calculation of royalties under Nokia's licensing agreement with InterDigital, which is currently before an arbitration panel.  According to InterDigital, pursuant to a "most favored licensee" provision in Nokia's licensing agreement, the calculation of royalties

2

under Nokia's licensing agreement is determined by the financial terms of Ericsson's licensing agreements. Nokia argued that access to the sealed records was proper because "InterDigital's assertion of the Ericsson settlement against Nokia has made the record of this case central to Nokia's opposition, which will require a detailed inquiry into the patents as construed by this Court and their applicability to the Ericsson technology accused of infringement in this case." Both Ericsson and InterDigital opposed Nokia's motion to intervene and Nokia's request for access to the sealed records.

On November 25, 2003, the Court heard oral argument on Nokia's Motion to Intervene and for Access to Sealed Record. The Court granted Nokia's Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(b), and outlined a procedure for addressing Nokia's Motion for Access to Sealed Record. Under that procedure, InterDigital and Ericsson were required to prepare and provide Nokia with a schedule of the sealed documents. The Court explained that the schedule should identify each sealed document by docket number, without revealing the contents of the document but in sufficient detail to allow Nokia to determine whether it would like to view the document. Then, once the schedule was furnished to Nokia, Nokia could move the Court to make specific documents available to Nokia. Additionally, the Court ordered InterDigital and Nokia to advise the arbitration panel that, subject to protecting Ericsson's trade secrets, the Court would make available to the arbitrators any document that they request. InterDigital and Ericsson have provided Nokia with a schedule of the sealed documents, but Nokia has not moved the Court to make specific documents from that schedule available to Nokia, apparently because the parties have agreed to make such documents available voluntarily. The arbitrators have not yet requested that the Court make any documents available to them.

3

On December 29, 2003, Nokia filed a motion under Federal Rule of Civil Procedure 60(b) to reinstate the orders and rulings vacated by the Court's March 18, 2003 Order. Nokia contends that the Court's March 18, 2003 Order vacating the Court's prior rulings "did not comply with the principles and policies articulated in Supreme Court precedent, did not demonstrate 'exceptional circumstances,' and went against the great weight of authority that claim construction and corresponding summary judgment orders should not be vacated merely because parties settle." InterDigital and Ericsson oppose the relief sought by Nokia, arguing that (1) the Court lacks jurisdiction to reinstate the vacated orders and rulings because Rule 60(b) does not allow the Court to reverse the Court's March 18, 2003 Order of vacatur, (2) the scope of Nokia's intervention does not allow Nokia to move for reinstatement of the vacated orders and rulings, (3) granting Nokia leave to intervene in order to move for reinstatement would be improper, and (4) the Court's March 18, 2003 Order of vacatur, if examined on the merits, withstands scrutiny under Rule 60(b).

## II. ANALYSIS

### A. Whether Rule 60(b) Empowers the Court to Reverse the Court's March 18, 2003 Order of Vacatur

Under Rule 60(b), the Court may upon motion relieve a party from a "final judgment, order, or proceeding" if one of the enumerated reasons warranting relief is satisfied. InterDigital and Ericsson contend that Rule 60(b) only authorizes the Court to reverse final judgments, not interlocutory orders, and that the March 18, 2003 Order of vacatur is an interlocutory order. In support, InterDigital and Ericsson quote the following Fifth Circuit precedent:

> By its own terms, Rule 60(b) is limited to relief from a "final" judgment or order. "Interlocutory orders and judgments are not within the provisions of 60(b), but are

4

> left within the plenary power of the court that rendered them to afford such relief from them as justice requires." As we stated in *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970), "an interlocutory order" is "not subject to being vacated under Rule 60(b)," but "because the order was interlocutory, 'the court at any time before final decree [could] modify or rescind it.'" *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985) (citations omitted).

In both *Zimzores* and *Bon Air Hotel*, the Fifth Circuit held that an interlocutory order could not be revised under Rule 60(b) prior to the entry of a final judgment in the case. *See Zimzores*, 778 F.2d at 266; *Bon Air Hotel*, 426 F.2d at 862. Rather, prior to the entry of a final judgment, the Court retains the power "unburdened by the requirements of Rule 60(b)" to revise or vacate its interlocutory orders. *Zimzores*, 778 F.2d at 266.

In this case, the Court entered an order on March 19, 2003 dismissing this action with prejudice. Therefore, unlike the district courts in *Zimzores* and *Bon Air Hotel*, the Court no longer retains the "unburdened" power to revise or vacate the March 18, 2003 Order. *Zimzores* and *Bon Air Hotel* do not address whether the Court, burdened by the requirements of Rule 60(b), may revise or vacate its March 18, 2003 Order.

Ericsson and InterDigital further argue that, because Rule 60(b) applies only to "final" orders, Rule 60(b) would empower the Court to revise or vacate only the Court's March 19, 2003 Order dismissing this case with prejudice. Although not cited by Ericsson and InterDigital, the court in *Menoken v. McNamara* interpreted the text of Rule 60(b) in a manner similar to that advocated by Ericsson and InterDigital. *Menoken v. McNamara*, 213 F.R.D. 193 (D.N.J. Feb. 27, 2003). In *Menoken*, the defendant removed the case to federal court, and the court found that it had subject matter jurisdiction over the case. *Id.* at 194. Apparently in reaction to that ruling, the plaintiff filed a notice of voluntary dismissal. *Id.* Subsequently, the plaintiff argued that the

5

court should reconsider its finding of subject matter jurisdiction pursuant to Rule 60(b). *Id.* at 195. The court concluded that the finding of subject matter jurisdiction was interlocutory and thus not subject to review or revision pursuant to Rule 60(b). *Id.*

In contrast to the analysis of the court in *Menoken*, this Court does not interpret the reference to "final orders" in Rule 60(b) to apply only to orders which literally finally dispose of cases. Rather, the Court interprets "final orders" as describing those orders that the Court no longer has the inherent power to revise or vacate without satisfying the requirements of Rule 60(b). As the Fifth Circuit recognized in *Zimzores*, prior to the entry of a final judgment, a district court retains "the power, unburdened by the requirements of Rule 60(b), to revise or vacate its interlocutory orders." *Zimzores*, 778 F.2d at 266. Therefore, prior to the entry of a final judgment, those orders are not "final" under Rule 60(b). However, once a final judgment is entered, those orders may no longer be freely revised or vacated by the district court. Rather, those orders become "final orders" that may only be revised or vacated by the district court pursuant to Rule 60(b). Similarly, absent an exception, an interlocutory order is generally not appealable prior to a final judgment, but it may be freely revised or vacated by the district court prior to final judgment; however, once a final judgment is entered, the order becomes a "final order" for purposes of appeal. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction from all final decisions of the district courts.").

Therefore, in this Court's view, once the Court entered the March 19, 2003 Order dismissing this case with prejudice, the Court's March 18, 2003 Order of vacatur became a "final order" under Rule 60(b). Therefore, if the requirements of Rule 60(b) are satisfied, the Court has the power to revise or vacate the March 18, 2003 Order.

6

### B. Whether the Scope of Nokia's Intervention Allows Nokia to Move for Reinstatement of the Vacated Orders and Rulings

On July 22, 2003, Nokia moved to intervene "for the limited purpose of gaining access to the record." At the November 25, 2003 hearing, the Court granted Nokia's motion to intervene. Nokia now contends that, despite the limited purpose of Nokia's motion to intervene, the scope of the intervention granted at the hearing allows Nokia to move for reinstatement of the vacated orders and rulings.

In support, Nokia cites the following statement, which the Court made at the November 25, 2003 hearing after granting Nokia's motion to intervene: "I will defer any ruling on any request for additional tender of the documents themselves. And if there is a motion to vacate my earlier vacating of orders, I will hear from you on that later." (Tr. at 66). Although the Court's statement, excerpted from the context of the hearing, arguably supports Nokia's motion for reinstatement, the Court did not then grant Nokia leave to intervene for any purpose beyond that described in Nokia's motion to intervene. Nokia's motion to intervene did not mention a desire to reinstate vacated orders and rulings.[1] As is apparent from the record, the Court's analysis of Nokia's motion to intervene was limited to the intervention described in Nokia's motion:

> I believe that Nokia would be prejudiced if the Court does not allow Nokia to intervene here, because separate actions to obtain the documents would be impossible, if not extraordinarily difficult, and I believe that the Court's order may have had the effect of prejudicing Nokia's right to argue its potential interest in the action. So I'm going to allow Nokia to intervene.
> (Tr. at 64).

---

[1] The propriety of the Court's Order of vacatur was discussed at the hearing only as a result of the Court's inquiry into Nokia's stated reasons for desiring access to the sealed and vacated orders and rulings: "But if the Special Master's report and the Court's order of claim construction are void, why does it matter what they say?" (Tr. at 7).

Therefore, the Court rejects Nokia's contention that the scope of Nokia's intervention is broad enough for the Court to consider Nokia's motion to reinstate the vacated orders and rulings.

### C. Whether the Court Should Grant Nokia Leave to Intervene in Order to Move for Reinstatement of the Vacated Orders and Rulings

Nokia has also moved for leave to intervene pursuant to Rule 24(b) to the extent necessary to allow Nokia to move for reinstatement of the vacated orders and rulings. Because the Court has found that the scope of Nokia's original intervention is not broad enough for the Court to consider Nokia's motion to reinstate, the Court must decide whether to grant Nokia's motion for leave to intervene pursuant to Rule 24(b). Rule 24(b) provides:

> Upon timely application anyone may be permitted to intervene in an action (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Therefore, under Rule 24(b), before granting Nokia's motion to intervene, the Court must analyze whether Nokia's motion to intervene is timely, whether Nokia's motion to reinstate shares a question of law or fact in common with the main action, and whether the Court should, in its discretion, allow intervention. Although the parties reference the issue of Nokia's standing as though it were encompassed in the timeliness analysis, the Court finds it more appropriate to address the issue of Nokia's standing before analyzing the elements of Rule 24(b) intervention.

### 1. Nokia's Standing to Contest the Vacatur

There is a split among the Circuits about the relationship of the Article III standing requirement and permissive intervention under Rule 24(b). *See In re Enron Corp. Sec.*, No. H-01-3624, 2004 WL 405886, at *22 (S.D. Tex. Feb. 25, 2004) (summarizing the Circuits'

8

positions). In *Ruiz v. Estelle*, the Fifth Circuit held: "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998). In this case, in contrast to *Ruiz*, the issue of the reinstatement of the vacated decisions and orders is not currently pending before the Court; rather, the Court will only have jurisdiction to consider this issue if the Court allows Nokia to intervene and assert a Rule 60(b) motion. Further, unlike in *Ruiz*, only Nokia, a non-party, seeks the reinstatement of the vacated decisions and orders; Ericsson and InterDigital oppose the relief sought by Nokia. Therefore, under the unique circumstances of this case, the Court finds that, unlike in *Ruiz*, the Court must analyze whether Nokia has standing to seek reinstatement of the vacated decisions and orders.

In order for a party to have standing, the party must have suffered an "injury in fact," there must be a causal connection between the injury and the conduct complained of, and it must be likely that the injury would be redressed by a favorable decision. *Walker v. City of Mesquite*, 169 F.3d 973, 978-79 (5th Cir. 1999). Nokia contends that the vacated rulings directly impact Nokia's obligations under its agreement with InterDigital because the scope and validity of InterDigital's patents affect Nokia's obligations. Nokia and InterDigital's dispute about Nokia's obligations under their agreement is currently pending before the arbitration panel. As long as rulings in this case remain vacated, Nokia is barred from asserting their effect on its obligations under its agreement with InterDigital. Although the Court recognizes that Justice Stevens's

9

dissent in *Izumi v. U.S. Philips Corp.*,[2] with which Justice Blackmun joined, is not binding on this Court, the Court is persuaded by the logic of Justice Stevens's analysis, which concluded that "Izumi obviously had a stake in the outcome of the motion, because the vacation of the Florida judgment significantly increased the potential liability and litigation expenses of its indemnitee." *Izumi v. U.S. Philips Corp.*, 510 U.S. 27, 34 (1993) (Stevens, J., dissenting).  In this case, the vacatur of the Court's rulings potentially affects Nokia's obligations under its agreement with InterDigital.  Therefore, the Court finds that Nokia has standing to move for their reinstatement.[3]

## 2. Timeliness of Application

Ericsson and InterDigital contend that Nokia's motion to intervene is *per se* untimely, because there is no litigation pending before this Court in which Nokia could intervene.  In support, Ericsson and InterDigital cite *Houston General Insurance Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999), in which the Fourth Circuit denied a third party's motion to intervene to vacate a default judgment under Rule 60(b) because the motion to intervene was filed more than 60 days after the entry of final judgment.  The Fourth Circuit based its ruling on the "well-settled law" that "intervention presupposes pendency of an action in a court of competent jurisdiction." *Id.*  In *Non-Commissioned Officers Association v. Army Times Publishing Co.*, the Fifth Circuit similarly articulated this "well-settled law" and denied a third party's motion to intervene to lift

---

[2]  The Court notes that the majority in *Izumi v. U.S. Philips Corp.* did not reach the issue of Izumi's standing because the majority found that the Court of Appeals's decision to deny Izumi's motion to intervene was not fairly included in Izumi's petition for certiorari. *Izumi v. U.S. Philips Corp.*, 510 U.S. 27, 34 (1993).

[3]  The Court may initiate its own Rule 60(b) motion. *See McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).  In this case, if the Court had found that Nokia did not have standing to assert a Rule 60(b) motion, the Court would have reexamined the Court's Order of vacatur on its own motion, pursuant to Rule 60(b).

the seal of a settlement agreement four years after the entry of the consent order because "[a] prerequisite of an intervention (which is an ancillary proceeding in an already instituted suit) is an existing suit within the Court's jurisdiction." *Non-Commissioned Officers Ass'n v. Army Times Publ'g Co.*, 637 F.2d 372, 373 (5th Cir. 1981), *modified on other grounds*, 650 F.2d 83 (5th Cir. 1981).

Contrary to the import of the Fourth Circuit's holding in *Houston General*, this Court concludes that the prerequisite of "an existing suit within the Court's jurisdiction" does not render Nokia's motion to intervene *per se* untimely. In Section II.A. of this Order, the Court found that a motion under Rule 60(b) affords this Court jurisdiction to revise the Court's Order of vacatur. Therefore, if the Court allows Nokia to intervene and pursue a Rule 60(b) motion, the issue of whether to revise the Court's Order of vacatur would be within this Court's jurisdiction.[4] Nokia would not be intervening in a non-existent suit over which the Court no longer retained jurisdiction; rather, Nokia would be intervening to pursue an issue within this Court's jurisdiction. Consequently, Nokia's motion to intervene is not *per se* untimely, but must be analyzed in light of the four timeliness factors outlined by the Fifth Circuit in *Stallworth v. Monsanto Co.*:

   1.   The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene.

---

   [4] Similarly, at the November 23, 2003 hearing, the Court rejected the argument that Nokia's motion to intervene was *per se* untimely. The Court based this ruling on the Court's continuing jurisdiction to unseal the sealed documents. The Court's December 18, 1993 Protective Order provided: "The Court retains jurisdiction to enforce the provisions of this Order and to make such arrangements, modifications and additions to this Order as the Court may from time to time deem appropriate."

2.      The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.

3.      The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.

4.      The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

Factor One

According to Nokia's counsel, Nokia first learned that the Court was considering vacating the Court's former decisions and orders on April 21, 2003, when InterDigital sent Nokia a letter containing a draft of the motion to vacate and a proposed order.  (Tr. at 6).  Although Nokia was in receipt of the proposed order of vacatur submitted by Ericsson and InterDigital, the Court's March 18, 2003 Order of vacatur was not unsealed by this Court until December 2, 2003.  Nokia's motion to intervene to reinstate vacated decisions was filed on December 29, 2003.  The Court finds that Nokia did not receive actual notice of the Court's March 18, 2003 Order of Vacatur until that Order became publicly available on December 2, 2003, and the Court therefore finds that this factor weighs in favor of the timeliness of Nokia's motion.

Factor Two

Ericsson and InterDigital do not identify any prejudice that they may suffer as a result of Nokia's failure to move to intervene for this purpose prior to December 29, 2003.  Therefore, the Court finds that this factor weighs in favor of finding Nokia's motion to be timely.

Factor Three

Nokia's intervention to move for reinstatement of the Court's vacated rulings and orders

12

is the only avenue for Nokia to pursue this remedy.  Therefore, this factor weighs in favor of finding Nokia's motion timely.  *Compare Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (finding it significant that the would-be intervenor "could just as easily have pursued this claim in state court").

<u>Factor Four</u>

Finally, the Court finds that unusual circumstances militate in favor of finding that Nokia's motion to intervene is timely.  Six of the seven vacated documents remain under seal and thus are not publicly available.  The Special Master's Final Report and Recommendation on Claim Construction, although not under seal, was mistakenly treated as sealed by the Clerk of Court.  (Tr. at 23).  The unavailability of the vacated documents certainly interfered with Nokia's ability to analyze whether Nokia wished to intervene to seek reinstatement of the vacated determinations.

Since all four factors weigh in favor of finding Nokia's motion to intervene to be timely, the Court finds that Nokia's motion is timely.

**3.  Common Question of Law or Fact**

Nokia seeks to intervene in order to procure the reinstatement of the Court's vacated decisions and orders.  The issue of whether vacatur was proper was before the Court when the Court considered Ericsson and InterDigital's Joint Motion to Vacate.  Therefore, the Court finds that Nokia's motion to reinstate shares a question of law in common with the main action.

**4.  Exercise of the Court's Discretion**

Since the Court has found that Nokia's motion to intervene is timely and that Nokia's motion to reinstate shares a question of law in common with the main action, the Court will

13

exercise its discretion under Rule 24(b) and determine whether to grant Nokia's motion to intervene. In exercising this discretion, "the [C]ourt shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b).

Ericsson's and InterDigital's settlement agreement was not conditioned upon the vacatur of the Court's rulings and orders; rather, it was conditioned upon the parties' filing a joint motion of vacatur. Therefore, the Court finds that permitting Nokia to intervene to challenge the vacatur of the Court's rulings and orders would not unduly delay or prejudice the adjudication of the rights of the original parties. Therefore, the Court grants Nokia leave to intervene to challenge the Court's March 18, 2003 Order under Rule 60(b).

### D. Whether the Court's March 18, 2003 Order Withstands Scrutiny Under Rule 60(b)(1)[5]

Upon timely motion, the Court may relieve a party from a final judgment, order, or proceeding under Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect." Nokia argues that relief under Rule 60(b)(1) is proper because, according to Nokia, the Court's Order of vacatur reflected a mistaken application of the law because it did not properly apply *U.S. Bancorp Mortgage v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

A Rule 60(b) proceeding "calls for a delicate adjustment between the desirability of finality and the prevention of injustice." *In re Casco Chem. Co.*, 335 F.2d 645, 651 (5th Cir. 1964). "[A] court is authorized under subsection (1) to correct a substantive 'mistake' of its own." *Meadows v. Cohen*, 409 F.2d 750, 752 n.4 (5th Cir. 1969). Rule 60(b)(1) can be invoked

---

[5] Because the Court finds that the vacated rulings should be reinstated under Rule 60(b)(1), the Court does not address Nokia's additional arguments for reinstatement under Rule 60(b)(3) and Rule 60(b)(6).

to correct judicial error, but only if it is an "obvious error of law, apparent on the record." *Hill v. McDermott*, 827 F.2d 1040, 1043 (5th Cir. 1987). For example, Rule 60(b)(1) may be employed when the judicial error "conflicts with a clear statutory mandate or when the judicial error involves a fundamental misconception of the law." *Id.*

Therefore, the Court will determine (1) whether the Rule 60(b)(1) motion is timely; (2) if so, what standard should apply to prejudgment vacatur in the district courts; (3) in light of the proper standard, how the Court should have ruled on the parties' joint motion to vacate; (4) in light of how the Court should have ruled, whether the Court's Order of vacatur reflected an "obvious error of law;" and (5) if so, whether the interest in the prevention of injustice outweighs the desirability of finality.

## 1. Timeliness of a Rule 60(b)(1) Motion

A Rule 60(b)(1) motion must be made "not more than one year after the judgment, order, or proceeding was entered or taken" and "within a reasonable time." FED. R. CIV. P. 60(b). The Court's Order of vacatur was entered on March 18, 2003. Nokia's Motion to Reinstate, filed on December 29, 2003, was made nine and one-half months after the Order of vacatur was entered. The determination of whether a Rule 60(b) motion was filed within a reasonable time depends on the particular facts and circumstances of the case, including "the interest in finality, the reason for delay, and practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). Because Ericsson's and InterDigital's settlement agreement was conditioned on the filing of a joint motion to vacate rather than on the vacatur, the Court's reinstatement of the vacated rulings

15

would not affect the finality of the settlement agreement. Further, the unavailability of the vacated documents certainly interfered with Nokia's ability to analyze whether Nokia wished to intervene and seek reinstatement of those documents. Finally, Ericsson and InterDigital have not identified any prejudice that they have suffered as a result of the timing of Nokia's Rule 60(b) motion. Therefore, the Court finds that Nokia's Rule 60(b) motion was made within a reasonable time. Because the Rule 60(b) motion was filed within a reasonable time and within a year after the Order of vacatur, the Court will consider the merits of the Rule 60(b) motion.

## 2. Proper Standard for Prejudgment Vacatur in the District Courts

In *U.S. Bancorp Mortgage v. Bonner Mall Partnership*, the Supreme Court addressed whether appellate courts should, under 28 U.S.C. § 2106,[6] vacate civil judgments of subordinate courts in cases after appeal is filed or certiorari sought. *U.S. Bancorp Mortgage v. Bonner Mall P'ship*, 513 U.S. 18 (1994). Although the specific issue before the Supreme Court involved the propriety of the Supreme Court's vacating the judgment of the Court of Appeals, the Supreme Court explicitly extended its holding to apply equally to the propriety of the Court of Appeals vacating a district court's judgment. *Id.* at 28-29. The Supreme Court held that mootness by reason of settlement does not justify vacatur of a judgment under review absent "exceptional circumstances," and those exceptional circumstances "do not include the mere fact that the settlement agreement provides for vacatur." *Id.* at 29. In reaching this conclusion, the Supreme

---

[6] 28 U.S.C. § 2106 provides:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

16

Court noted that a party seeking vacatur must demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26. The Supreme Court further recognized that the public's interest must be taken into account when analyzing whether vacatur is justified: "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 26 (quoting *Izumi*, 510 U.S. at 40 (Stevens, J., dissenting)). The Supreme Court rejected the policy argument that vacatur by reason of settlement would facilitate settlement:

> But while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may deter settlement at an earlier stage. Some litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal.

*Id.* at 27-28.

Finally, the Supreme Court addressed whether it is inequitable to force settling parties to acquiesce in a judgment that was not tested on appeal: "Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *Id.* at 25.

This case differs from *Bancorp* in two primary ways. First, this case involves vacatur of a district court's rulings by a district court rather than vacatur of a subordinate court's rulings by an appellate court. Second, this case involves prejudgment vacatur of rulings rather than post-judgment vacatur of rulings. Subsequent to *Bancorp*, numerous courts have found *Bancorp* to be

17

a useful guide in analyzing whether a district court should grant settlement-related vacatur. These cases must be divided, however, into two categories: (1) those courts, as here, applying *Bancorp* in a prejudgment motion to vacate; and (2) those courts applying *Bancorp* in a post-judgment motion to vacate.  *See Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216 (Fed. Cir. 2001) (post-judgment); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000) (post-judgment); *PolyMASC Pharm., PLC v. Alza Corp.*, No. Civ. A. 01-228-JJF, 2004 WL 633256 (D. Del. Mar. 26, 2004) (post-judgment); *Nilssen v. Motorola, Inc.*, Nos. 93-C-6333 & 96-C-5571, 2002 WL 31369410 (N.D. Ill. Oct. 21, 2002) (prejudgment); *Ryland Group, Inc. v. Travelers Indem. Co.*, No. A-00-CA-233-JRN, 2001 WL 1200655 (W.D. Tex. Feb. 16, 2001) (Austin, M.J.) (prejudgment); *Allen-Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316 (E.D. Wis. Mar. 27, 2001) (Callahan, M.J.) (prejudgment); *In re Fraser*, 98 F. Supp. 2d 788 (E.D. Tex. 2000) (Folsom, J.) (post-judgment).  Guided by the aforementioned cases analyzing *Bancorp* in the context of district court vacatur, the Court will determine whether *Bancorp*'s reasoning applies to this case despite the two primary differences between this case and *Bancorp*.

First, in *Bancorp*, the Supreme Court characterized vacatur as an "extraordinary remedy" to which the parties must show equitable entitlement, and this Court finds that the remedy of vacatur is also as extraordinary when granted by a district court prior to the entry of judgment. *Bancorp,* 513 U.S. at 26.  Prior to the entry of judgment, orders and decisions "are subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b).  The Court's conclusion that prejudgment vacatur is an extraordinary remedy arises from the nature of the remedy itself.  Like Rule 54(b), 28 U.S.C. § 2106 does not impose strict standards on the granting of vacatur: "The Supreme

18

Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review . . . ." Therefore, the Supreme Court's characterization of vacatur as an extraordinary remedy likely arose from the nature of the remedy itself. Thus, even though this case involves a district court's vacatur of a district court's rulings pursuant to Rule 54(b) rather than an appellate court's vacatur of a district court's rulings pursuant to 28 U.S.C. § 2106, the remedy of vacatur is no less extraordinary.[7]

In *Bancorp*, the Supreme Court further recognized that the public's interest must be taken into account when analyzing whether to vacate a judgment of the Court of Appeals, which was presumptively correct and valuable to the legal community as a whole. *Bancorp*, 513 U.S. at 26 (quoting *Izumi*, 510 U.S. at 40 (Stevens, J., dissenting)). This Court must determine whether, like an appellate court's judgment, a district court's prejudgment ruling is presumptively correct and valuable to the legal community. When extending its holding to encompass a Court of Appeals vacatur of a district court's judgment, the Supreme Court explicitly rejected the argument that district court judgments are presumptively less valid than appellate judgments: "If the point of the proposed distinction is that district-court judgments, being subject to review as of right, are more likely to be overturned and hence presumptively less valid: We again assert the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on

---

[7] The Ninth Circuit has found that district-level vacatur is less extraordinary than appellate vacatur: "Given the fact-intensive nature of the inquiry required, it seems appropriate that a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." *Am. Games v. Trade Prods., Inc.*, 142 F.3d 1164, 1170 (9th Cir. 1998). However, this Court agrees with the Fourth Circuit that the district court's greater familiarity with the facts of a case should not cause the remedy of vacatur to be considered less extraordinary; rather, the district court's greater familiarity should result in "a deferential standard of review on appeal." *Valero*, 211 F.3d at 119 n.3.

the basis of judicial estimates of their merits." *Id.* at 28. Further, the Supreme Court quoted

Justice Stevens's *Izumi* dissent for the proposition that judgments are presumptively correct and

valid, and *Izumi* dealt with the vacatur of district court judgments. *Id.* at 26 (quoting *Izumi*, 510

U.S. at 40 (Stevens, J., dissenting)). Therefore, the Court finds that district court judgments, like

appellate judgments, are presumptively correct and valuable to the legal community. In this case,

however, the Court must take the further step to determine whether district court prejudgment

rulings are, prior to the entry of judgment, presumptively correct and valuable. Rule 54(b)'s

recognition that prejudgment rulings are "subject to revision at any time before the entry of

judgment" suggests that prejudgment rulings, prior to the entry of judgment, do not carry the

same presumption of correctness and value as final judgments.

Additionally, the Supreme Court reasoned that the *Bancorp* standard for vacatur would

discourage "rolling the dice" and would encourage district-level settlement, where the judicial

economies achieved by settlement are greatest. *Bancorp*, 513 U.S. at 27-28. Here, the Court

must determine whether application of the *Bancorp* standard for vacatur would encourage

settlement prior to the Court's entry of *Markman* and summary judgment rulings, and, if so,

whether encouraging settlement at that stage achieves substantial judicial economies. As

recognized by the court in *Allen-Bradley*, "just as the availability of post-judgment vacatur by an

appellate court may encourage some litigants to 'roll the dice' rather than settle, so too may the

availability of post-*Markman* hearing vacatur encourage the gambler within some litigants."

*Allen-Bradley*, 199 F.R.D. at 318. The application of the *Bancorp* standard to prejudgment

motions to vacate would encourage settlement prior to the Court's entry of *Markman* and

summary judgment rulings. Further, the Court recognizes that substantial judicial economies

20

would be achieved if parties were encouraged to settle prior to the Court's entry of *Markman* and summary judgment rulings. Therefore, the Court finds that the application of the *Bancorp* standard for vacatur would promote judicial economy by encouraging settlement prior to the Court's entry of *Markman* and summary judgment rulings.

Finally, the Supreme Court found that applying the *Bancorp* standard was not inequitable because "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari." *Bancorp*, 513 U.S. at 25. Similarly, where, as here, the parties settle the case without conditioning that settlement on the vacatur of prior rulings in the case, it is not inequitable to refuse to vacate the rulings, even though the parties did not have the opportunity to test those rulings on appeal. The parties voluntarily forfeit their right to the ordinary processes of appeal when they agree to settle the case; and, if settlement would no longer be advantageous absent vacatur, the parties can condition their settlement agreement upon vacatur.

Much of the reasoning underlying *Bancorp* applies with equal force to the vacatur of prejudgment rulings by a district court: vacatur is an extraordinary remedy in this context, the *Bancorp* standard would encourage settlement and achieve judicial economies, and the application of the *Bancorp* standard would not be inequitable. Although prejudgment rulings, prior to the entry of judgment, may not carry the same presumption of correctness and value as final judgments, the Court nonetheless finds that the analysis of whether to vacate prejudgment rulings, prior to the entry of judgment, should be guided by the standards enunciated in *Bancorp*.

### 3. Proper Ruling on the Parties' Joint Motion to Vacate

Guided by the standards enunciated in *Bancorp*, the Court should not have granted the parties' joint motion to vacate absent a finding of "exceptional circumstances." In their joint

21

motion to vacate, the parties proffered the following reasons in support of vacatur: (1) the

parties' agreement to file the joint motion to vacate was a critical issue during the settlement

negotiations; (2) no novel or controversial legal issues were decided in the rulings; (3) no non-

parties would be affected by the vacatur "because there is no other litigation currently pending in

any other court regarding the patents and issues involved in this litigation;" (4) the public interest

in the decisional law is weak because the rulings sought to be vacated are interlocutory; and (5)

the parties disagree with various aspects of the rulings and wish to prevent the rulings from

having future precedential effect.  The Court must determine whether these proffered reasons

constitute "exceptional circumstances" under *Bancorp*.

The parties' agreement to file the joint motion to vacate is insufficient to constitute

"exceptional circumstances."[8] *Bancorp*, 513 U.S. at 29 ("[E]xceptional circumstances do not

include the mere fact that the settlement agreement provides for vacatur--which neither

diminishes the voluntariness of the abandonment of review nor alters any of the policy

considerations we have discussed.").  While the presence of novel legal issues or pending

litigation involving the same issues would weigh against the granting of vacatur, the assertion

that no novel legal issues were decided and that no other litigation currently pending involves the

same issues does not allege "exceptional circumstances."  Further, although the Court recognized

in the preceding section that prejudgment rulings, prior to the entry of judgment, may not carry

---

[8]    The Court does not address whether, if the parties' settlement agreement were
conditioned upon the vacatur of earlier rulings, and if the further pendency of the case in the
district court would expend a massive quantity of resources, the Court's interest in conserving its
own judicial resources and the parties' interest in conserving their resources could constitute
"exceptional circumstances" under *Bancorp*.  In this case, the parties' settlement was conditioned
on the filing of the joint motion to vacate, not on the granting of the joint motion to vacate.

the same presumption of correctness and value as final judgments, the Court does not find that

the public interest in the prejudgment rulings is so weak as to constitute "exceptional

circumstances." Finally, the parties' interest in avoiding any future precedential effect of the

rulings does not constitute "exceptional circumstances." If the parties had not settled the case,

they could have argued their disagreement with the rulings to the Federal Circuit. By settling the

case after the entry of the rulings, the parties chose to forego this opportunity: their "voluntary

forfeiture of review constitutes a failure of equity." *Bancorp*, 513 U.S. at 26. Therefore, the

parties' desire to avoid the possible precedential effect of the rulings does not constitute

"exceptional circumstances." *See Aqua-Marine*, 247 F.3d at 1221 (finding no exceptional

circumstances despite recognizing one party's "concern that the district court's judgment of

invalidity could be asserted as a defense by another alleged infringer in a future infringement

suit"); *Nilssen*, 2002 WL 31369410, at *3 (noting that the party urging vacatur "fails to

demonstrate why avoiding issue preclusion constitutes an exceptional, or even significant,

circumstance"). In conclusion, the Court, guided by *Bancorp*, finds that it erred in granting the

parties' joint motion to vacate. That motion should have been denied.

### 4. "Obvious Error of Law"

In light of the Court's determination that the Court improperly granted the parties' joint

motion to vacate, the Court must analyze whether that mistake constituted an "obvious error of

law, apparent on the record." *Hill*, 827 F.2d at 1043. The Court finds that the mistake

constituted an obvious error of law. Prior to the Court's ruling, numerous courts had recognized

that *Bancorp* should guide district-level vacatur, but this Court nonetheless granted the parties'

joint motion to vacate for the primary reason that the parties had settled their dispute, without

23

finding exceptional circumstances.

**5.  Balancing the Interests in the Prevention of Injustice and the Desirability of Finality**

The Court must determine whether to reinstate the erroneously vacated rulings, balancing "the desirability of finality and the prevention of injustice." *In re Casco Chem. Co.*, 335 F.2d at 651. Here, the erroneous vacatur has unjustly prevented Nokia from arguing before the arbitration panel that the Court's *Markman* and summary judgment rulings affect Nokia's obligations under the license agreement. Further, as recognized in the preceding section addressing the timeliness of Nokia's Rule 60(b) motion, because InterDigital and Ericsson's settlement agreement was conditioned on the filing of a joint motion to vacate rather than on the vacatur, the Court's reinstatement of the vacated rulings would not affect the finality of the settlement agreement. Therefore, the Court concludes that the interest in preventing injustice outweighs the desirability of finality.

**III.  CONCLUSION**

The Court finds that Rule 60(b) empowers the Court to reverse the Court's March 18, 2003 Order. Although the scope of Nokia's previously-granted intervention does not allow Nokia to move for reinstatement of the vacated orders and rulings, the Court grants Nokia leave to intervene in order to move for reinstatement. Based on the intervention, the Court reconsiders the parties' joint motion to vacate and concludes that it failed to follow the guidance of *Bancorp* and improperly granted the motion. Because the Court's error constituted an "obvious error of law, apparent on the record," and because the interest in preventing injustice outweighs the

24

desirability of finality, the Court hereby reinstates the following rulings pursuant to Rule 60(b)(1):

- Special Master's Final Report and Recommendation on Claim Construction, entered on September 8, 2000

- Findings, Conclusions, and Recommendations of the United States Magistrate Judge, entered on May 21, 2001

- Order [on Claim Construction], entered on July 16, 2001

- Agreed Order [on Claim Construction], entered on July 24, 2001

- Memorandum Opinion and Order Granting Ericsson's Motion for Summary Judgment of Non-Infringement Based on the Single Base Station Limitation, entered on May 21, 2002

- Order Dismissing Declaratory Judgment Action Regarding Non-Infringed Claims, entered on January 9, 2003

**SO ORDERED.**

June 3 , 2004.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

25